IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL CARR, GREGORY KATHAN; KELLY L'ROY; PERRY MEIER; CHARLES MULHALL; and SCOTT MUND, on behalf of themselves and all others similarly situated, | § § § § § | |
| | § | CIVIL ACTION NO. 4:14-cv-00451 |
| *Plaintiffs*, | § § | |
| v. | § § | |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | § § § | JURY DEMANDED |
| *Defendant.* | § § | |

**DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

OF COUNSEL:

Cohen, Weiss and Simon LLP
330 West 42nd Street, 25th Floor
New York, NY 10036-6979
Telephone: (212) 563-4100
Facsimile: (212) 695-5436

Michael E. Abram
New York Bar No. 1294941
Michael L. Winston
New York Bar No. 2054104
Thomas N. Ciantra
New York Bar No. 2370161
Joshua J. Ellison
New York Bar No. 4319349

Shellist | Lazarz | Slobin LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

J. Alfred Southerland
State Bar No. 18860050
Federal ID No. 07341
alfsoutherland@sls-lawyers.com

Air Line Pilots Association, International
1625 Massachusetts Avenue, NW, 8th Floor
Washington, D.C. 20036
Telephone: (202) 797-4054
Facsimile: (202) 797-4014

Marcus C. Migliore
District of Columbia No. 411674
Jonathan A. Cohen
District of Columbia No. 952861
James K. Lobsenz
District of Columbia No. 432654

**ATTORNEYS FOR DEFENDANT
AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ............................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ..........................................................................2

SUMMARY OF FACTS ......................................................................................................2

STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT ....................................6

ARGUMENT ...................................................................................................................7

I. APPLICABLE LEGAL STANDARDS AND STANDARD OF REVIEW……………..7

 A. Motion to Dismiss………………………………………………………………7

 B. Motion for Summary Judgment……………………………………………………8

 C. The DFR Standard………………………………………………………………9

II. PLAINTIFFS FAIL TO STATE A CLAIM AND DISMISSAL
 OF THE CASE IS APPROPRIATE……………………………………………………..11

 A. The Plaintiffs are Bound by the Award……………………………………………..11

 B. Plaintiffs Representatives Failed to Exhaust Internal Union Remedies…………..14

 C. Plaintiffs' Allegations Fail to State a DFR Claim………………………………...15

  1. ALPA Merger Policy……………………………………………………..15

  2. Plaintiffs' Contentions That ALPA "Meddle[d]" in the Arbitration……...18

  3. Plaintiffs' Allegations Concerning
  Their Merger Committee and Its Counsel……………………………………...21

  4. The Claim of ALPA's Intent to Interfere Is Not Even Plausible…………22

 D. In the Event that Dismissal Is Not Appropriate Under Rules
  12(b)(6) or 56, the Complaint Should be Dismissed Under Rule 12(b)(7)……….23

CONCLUSION……………………………………………………………………………..23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acree v. ALPA*, 390 F.2d 199 (5th Cir. 1968)..........................................................12, 15

*Air Wisc. Pilots Prot. Comm. v. Sanderson*, 909 F.2d 213 (7th Cir. 1990)........................ passim

*ALPA v. O'Neill*, 499 U.S. 65 (1991) ....................................................................9, 10

*Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Employees v. Lockridge*,
   403 U.S. 274 (1971)..........................................................................................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................7, 8, 15, 22

*Bache v. Am. Tel. & Tel.*, 840 F.2d 283 (5th Cir. 1988) ................................................11

*Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*,
   884 F. Supp.2d 535 (S.D. Tex. 2012) ................................................................23

*Barr v. United Parcel Serv., Inc.*, 868 F.2d 36 (2d Cir. 1989) ........................................11

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................7, 8

*Blanks v. UAW Local 848*, 837 F. Supp. 2d 609
   (N.D. Tex. 2011), *aff'd*, 464 F. App'x 284 (5th Cir. 2012)....................................11

*Butschek v. S.W. Bell Tel. Co.*, 952 F. Supp. 470 (S.D.Tex. 1996) ............................9, 11

*Case v. IBEW Local Union No. 1547*, 438 F. Supp. 856 (D. Alaska 1977), *aff'd sub nom.*
   *Stelling v. IBEW Local Union No. 1547,* 587 F.2d 1379 (9th Cir. 1978) ..............23

*Clayton v. UAW*, 451 U.S. 679 (1981)........................................................................15

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000)........................7, 8

*Comm. of Concerned Midwest Flight Attendants v. Teamsters Airline Div.*,
   662 F.3d 954 (7th Cir. 2011) ............................................................................2

*Considine v. Newspaper Agency Corp.*, 43 F.3d 1349 (10th Cir.1994) ....................10, 11

*Continental Airlines*, 39 N.M.B. 167 (2011) ..............................................................2

*Cooper v. TWA Airlines, LLC*, 274 F. Supp. 2d 231 (E.D.N.Y. 2003)........................10

*Cunningham v. United Airlines, Inc.*, 2014 WL 441610 (N.D. Ill. Feb. 4, 2014),
  *appeal docketed*, No. 14-1453 (7th Cir March 3, 2014) ..........................................16

*DaCosta v. Union Local 306*, 2009 WL 2986388 (S.D.N.Y. Aug. 12, 2009) .............................13

*Del Casal v Eastern Airlines, Inc.*, 634 F.2d 295 (5th Cir. 1981) ...........................................16, 23

*Downs v. Liberty Life Assurance Co.*, No. 3:05-CV-0791R,
  2005 WL 2455193 (N.D. Tex. Oct. 5, 2005) ...........................................................................8

*Eash v. Bhd. of Ry. Clerks*, No. SA-84-CA-0049, 1985 WL 9669 (W.D. Tex. 1985) .................15

*Farris v. Union Pac. R.R.*, 396 Fed. Appx. 125 (5th Cir. 2010) .................................................23

*Figueroa v. D.C. Metro. Police Dep't*, 2009 WL 3113241 (D.D.C. 2009),
  *rev'd in part on other grounds*, 633 F.3d 1129 (D.C. Cir. 2011) .............................................13

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953) ......................................................................18

*Gerhardt v. Air Transp. Local 557*,
  No. H-09-3314, 2011 WL 666500 (S.D. Tex. Feb. 14, 2011) ..........................................9, 11

*Grovner v. Georgia-Pac. Corp.*, 625 F.2d 1289 (5th Cir. 1980) ...................................................11

*Gvozdenovic v. United Air Lines*, 933 F.2d 1100 (2d Cir. 1991) ............................................12, 16

*Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*,
  966 F. Supp. 4 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998) ....................................9

*Hammond v. ALPA*, 1991 WL 202638 (N.D. Ill Sept. 30, 1991) .................................................22

*Hayes v. Bhd. of Ry. Clerks/Allied Servs. Div.*, 727 F.2d 1383 (5th Cir. 1984) ...........................14

*Herring v. Delta Airlines, Inc.*, 894 F.2d 1020,1022 (9th Cir. 1990) .............................................13

*Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976) ...........................................................10

*HS Res., Inc. v. Wingate,* 327 F.3d 432 (5th Cir. 2003) ................................................................23

*In re BP p.l.c. Sec. Litig.*, 922 F. Supp. 2d 600 (S.D. Tex. 2013) ..................................................8

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  761 F. Supp. 2d 504 (S.D. Tex. 2011) ...................................................................................8

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................22

*Jeffreys v. Communications Workers,* 354 F.3d 270 (4th Cir. 2003) .......................................10, 11

*Kane Ent. v. MacGregor (USA) Inc.,* 322 F.3d 371 (5th Cir. 2003) ...............................................7

*Kellogg Brown & Root Servs., Inc. v. Altanmia Comm'l Mktg. Co.*
   *W.L.L.*, 2007 WL 4190795 (S.D. Tex. Nov. 21, 2007)............................................................23

*Landry v. The Cooper/T. Smith Stevedoring Co., Inc.,* 880 F.2d 846 (5th Cir. 1989).................10

*Marquez v. Screen Actors Guild*, 525 U.S. 33 (1998) ...................................................................10

*Monahan v. NYC Dep't of Corrections*, 214 F.3d 275 (2d Cir. 2000).........................................13

*Moore v. Potter*, 275 F. App'x 405 (5th Cir. 2008)..................................................................7, 11

*O'Neill v. ALPA*, 939 F.2d 1199 (5th Cir. 1991) ....................................................................10, 19

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse*
   *Indep. Truck Drivers Union, Local 1*, 611 F.2d 580 (5th Cir. 1980).....................................13

*Rakestraw v. United Air Lines*, 981 F.2d 1524 (7th Cir. 1992) ...................................11, 16, 18, 22

*Sandoval v. Bhd. of Ry. Clerks*, 1986 WL 8893 (S.D. Tex. July 18, 1986)..................................14

*Sawyer v. APWU*, 2011 WL 6029925 (N.D. Tex. Nov. 30, 2011) ...............................................11

*Schmidt v. IBEW*, 980 F.2d 1167 (8th Cir. 1992) .......................................................................11

*Semper v. New York Methodist Hosp.*, 786 F. Supp.2d 566 (E.D.N.Y. 2011) .............................11

*Simo v. Union of Needletrades, Indus. & Textile Employees*,
   322 F.3d 602 (9th Cir.2003) ...................................................................................................11

*Spellacy v. ALPA*, 156 F.3d 120 (2d Cir. 1998)......................................................................9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ..............................................7

*TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754 (5th Cir. 2002).....................................................9

*United Steelworkers v. Rawson*, 495 U.S. 362 (1990)...................................................................9

*Vaca v. Sipes*, 386 U.S. 171 (1967) .............................................................................................9

*VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451 (5th Cir. 2011)......................................9

*Weiner v. Klais & Co., Inc.*, 108 F.3d 86 (6th Cir. 1997).............................................................8

*Williams v. AT & T, Inc.*, CIV A H-07-0559, 2009 WL 938495
   (S.D. Tex. Apr. 6, 2009), *aff'd,* 356 F. Appx 761 (5th Cir. 2009).........................................10

*Yeftich v. Navistar, Inc.*, No. 12-2964, 2013 WL 2992163 (7th Cir. June 18, 2013) ...................11

iv

## STATUTES AND RULES

45 U.S.C. §§ 151 *et seq.*.................................................................................2, 3

45 U.S.C. § 153 First (q)....................................................................................23

49 U.S.C. § 42112..............................................................................................2

49 U.S.C. § 42112(a)(1)...............................................................................2, 11

Fed R. Civ. P. Rule 12(b)(6) ...................................................................... passim

Fed R. Civ. P. Rule 12(b)(7) .......................................................................7, 23

Fed. R. Civ. P. 19(a)(1)(A) ...............................................................................7

Fed. R. Civ. P. 56................................................................................6, 11

Fed. R. Civ. P. 56(a) ........................................................................................9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL CARR, GREGORY KATHAN; KELLY L'ROY; PERRY MEIER; CHARLES MULHALL; and SCOTT MUND, on behalf of themselves and all others similarly situated, | § § § § § | CIVIL ACTION NO. 4:14-cv-00451 |
| *Plaintiffs*, | § § | |
| v. | § § | |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | § § § | JURY DEMANDED |
| *Defendant.* | § § | |

**DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Air Line Pilots Association, International ("ALPA") moves to dismiss Plaintiffs' Original Complaint ("Complaint" or "Compl.") under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56.  In support thereof, ALPA shows the following:

## INTRODUCTION

In 2010, United Airlines ("United") and Continental Airlines ("Continental") merged. Plaintiffs are six pilots then employed by Continental and now by the merged United who are dissatisfied with their seniority position under the decision and award ("Award") of a board of three labor arbitrators selected by the representatives of the pre-merger Continental pilots and pre-merger United pilots.  The Award integrated the seniority lists of the two pilot groups in a specific order and adopted associated conditions for the list (the "Integrated Seniority List" or "ISL").  Both by law and by agreement with the representatives of the two pilot groups and ALPA, United was obligated to and did incorporate the ISL into a new collective bargaining

1

agreement for the combined pre-merger groups (the "United Pilot Agreement" or "UPA"). Alleging a breach by ALPA of the duty of fair representation ("DFR"), Plaintiffs ask this Court to void the Award and amend the UPA by replacing the ISL with a new seniority list resulting from a second arbitration.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed their Complaint on February 24, 2014.  Since the legal issues warrant dismissal of the case at the initial stage, ALPA is filing this Motion in lieu of an answer.

## STATEMENT OF FACTS

**United/Continental Merger and ALPA Pilot Representation.**  United and Continental merged in 2010 and now operate as a single airline.  *See* Compl. ¶1; Declaration of Daniel G. Orfield, dated April 24, 2014 ("Orfield Decl."), ¶2 & Ex. A (the Award) at 1.  ALPA represented the pilots of both airlines under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, and now does so at the combined carrier.  Compl. ¶24; *Continental Airlines*, 39 N.M.B. 167, 169 (2011). ALPA represents pilots through coordinating councils, the Master Executive Councils ("MECs"), each consisting solely of pilots elected by their fellow pilots at each airline where ALPA is the representative.  Compl. ¶¶23, 24.

**McCaskill-Bond and ALPA Merger Policy.**  A provision of the Federal Aviation Act, the McCaskill-Bond amendment, 49 U.S.C. § 42112, obligates merging carriers such as United and Continental to integrate employee seniority lists in accordance with the internal policies, if any, of a union that represents the relevant employees at both of the merging airlines.  49 U.S.C. § 42112(a)(1).[1]  *See generally Comm. of Concerned Midwest Flight Attendants v. Teamsters Airline Div.*, 662 F.3d 954, 957 (7th Cir. 2011).

---

[1] McCaskill-Bond, 49 U.S.C. § 42112(a)(1), provides:

ALPA has such an internal policy (called its "Merger Policy") that:

- Provides for negotiation and arbitration of seniority list integrations between pilot groups, with each group represented by its own Merger Representatives (or "Merger Committee") elected by its MEC, Orfield Decl. Ex. D, Merger Policy at Part 3.C.1; *see* Compl. ¶34;

- Grants these representatives "complete and full authority to act for and on behalf of the flight deck crew members of their respective airlines," Orfield Decl. Ex. D, Merger Policy at Part 3.C.1; *see* Compl. ¶34;

- Authorizes the respective pilot groups and their Merger Representatives to "fashion their own process, subject only to meeting certain fundamental requirements of policy," Orfield Decl. Ex. D, Merger Policy Preamble p. 3, which in turn are described in the Merger Policy, Orfield Decl. Ex. D, Merger Policy at Part 2.C. 1.a.(1)(a);[2] and

- Limits ALPA's role to "solely [providing] the process by which the pilot groups conclude the integrated seniority list for presentation to management," *Id.* at Part 1, Preamble p. 4, ¶ 5.

Thus, under ALPA's Merger Policy, each group's respective Merger Representatives — not ALPA's administration — are in charge of the integration of their seniority lists.

   **The United/Continental Seniority Integration**.   In this case, United agreed with the representatives of the two pilot groups to merge their seniority lists in accordance with the

---

(a) **Labor integration**. -- With respect to any covered transaction involving two or more covered air carriers that results in the combination of crafts or classes that are subject to the Railway Labor Act (45 U.S.C. 151 et seq.), sections 3 and 13 of the labor protective provisions imposed by the Civil Aeronautics Board in the Allegheny-Mohawk merger (as published at 59 C.A.B. 45) shall apply to the integration of covered employees of the covered air carriers; except that –

   (1) if the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers, that collective bargaining agent's internal policies regarding integration, if any, will not be affected by and will supersede the requirements of this section.

[2] Most relevant here are the provisions establishing the full authority of the Merger Representatives to act on behalf of their respective pilot groups (Part 3.C.1); the standards to be employed to compile a "fair and equitable" integrated seniority list (Part 3.C.4.e. and Part 3.C.5.a.(2)); the requirement that the arbitrated seniority integration "shall be final and binding on all parties to the arbitration" (Part 3.C.5.e.2); and the prohibition on payment by ALPA of "legal and consulting fees" in a merger between two ALPA-represented pilot groups (Part 3.F.5.), with such fees, instead, to be paid by the respective pilot groups from a Merger Assessment Fund maintained by the respective MECs and derived from assessments on their own pilot membership – and not from ALPA's treasury or even the MEC's own discretionary funds (Part 3.F. 3.).

procedural agreement (the "Protocol") between the pilots' respective representatives. *See* Orfield Decl. Ex. B, Transition and Process Agreement ("TPA") ¶5-A and Exh C, Protocol ¶2.A.[3]  Under the Protocol the Continental and United MECs each selected a four-person Merger Committee, consisting solely of experienced pilots from their own airline, Orfield Decl., Ex. C at 1, and each Merger Committee retained its own counsel – Katz & Ranzman PLLC for the Continental Merger Committee and Bredhoff & Kaiser, PLLC for the United Committee, Orfield Decl. Ex. A at 1.[4]  *See also* Orfield Decl. Ex. D, Merger Policy part 3.C.4.g.  The Merger Committees agreed to select arbitrators "from an ALPA-maintained list of professional labor arbitrators, using the alternate-strike method, if necessary."[5]  *See* Orfield Decl. Ex. C, Protocol ¶2.F.  They also agreed that "any disputes concerning the interpretation or application of this Agreement shall be resolved by the Arbitration Board."  *Id.* ¶2.M.

The Merger Committees chose Dana E. Eischen, Roger P. Kaplan and Dennis R. Nolan -- all experienced arbitrators.[6]  As detailed in the Award, at 2, following the failure of negotiations, the panel held evidentiary hearings in Washington, D.C. during April – June, 2013, providing the Merger Committees "full opportunity to submit oral and documentary evidence, including direct testimony and expert opinions, all subject to cross-examination and rebuttal."  The two Merger

---

[3] The TPA and Protocol Agreement are attached in redacted form to the Award, which is found at Orfield Decl. Ex. A and are also at the core of the Complaint (*see* Compl. ¶¶ 58).  A complete copy of the TPA is found at Orfield Decl. Ex. B and a separate copy of the Protocol Agreement is found at Orfield Decl. Ex. C.  The Merger Policy is also at the core of the Complaint (*see, e.g.,* Compl. ¶37).

[4] *E.g.,* http://cptaudio.com/merger/finalcombinedtranscripts.txt.

[5] Selecting from a list provided by ALPA is not one of the "fundamental requirements of policy" that could not be changed by the MECs.  *See* Merger Policy, Preamble, p. 3, Part 2.C 1.a.(1)(a).

[6] Credentials and biographies of these arbitrators are publically available at:
http://www.docstoc.com/docs/51264850/Arbitration-and-Mediation-of-Labor-Disputes-and-Employment-Litigation---PDF---PDF; http://www.laborarb.com/default-arbitrators.cfm?CategoryID=3&ParentID=0&ArbitratorID=55; http://www.lawmemo.com/arbitrationblog/2006/05/arbitrator_denn.html.

Committees and their counsel were, aside from witnesses, the only participants in the arbitration. Orfield Decl. Ex. A, Award at 1.  Each side presented its own proposals for integrating the seniority lists, Award at 12-18, and both submitted thorough pre-hearing and post-hearing briefs. *Id.* at 2, 33; Compl. ¶67.  The Complaint could not, and does not, allege that any limitations were placed on the arguments or proposals which could be presented by the Committees to the arbitrators.

**The Award.**  ALPA Merger Policy, as revised in 2009 and as applicable here, provides that "[f]actors to be considered in constructing a fair and equitable integrated seniority list, in no particular order and with no particular weight, shall include but not be limited to the following: [] Career expectations[,] []Longevity[,][] Status and category."  Orfield Decl. Ex. D, Merger Policy part 3.C.4.e.  In their September 2013 Award, the arbitrators noted that ALPA's governing bodies had, as the provision cited above shows, restored longevity (time a pilot has worked as a pilot for an airline) as one of the factors to be considered in constructing the seniority list and accordingly considered it along with the other factors.  Orfield Decl. Ex. A, Award at 11-12, 18-19.  The arbitrators found that the Continental pilots' proposal ignored longevity and used a base date that would increase the number of Continental's Captain positions.  *Id*. at 22.  They accordingly found that the Continental pilots' proposal was "incompatible with the revised ALPA Merger Policy" and was "neither fair nor equitable" because, if implemented, it would generate "windfall inequities" in favor of the Continental pilots and "unfairly, inequitably and disproportionately benefit[]" those pilots.  *Id.*

The Award, however, did not adopt the United pilots' proposal, which was based on a combination of group longevity and status/category, but modified it by giving greater weight to status/category and less weight to longevity.  Orfield Decl. Ex. A, Award at 35-36.  The

arbitrators also adopted, with some modifications, the Continental pilots' proposal regarding the protection of wide-body flying.  *Id.* at 43.

The Board closed with the observation that among other things the "end result" of a seniority arbitration, "no matter how crafted, never commands universal acceptance."  Orfield Decl. Ex. A, Award at 44.  Frequently, in fact, employees dissatisfied with a seniority list arbitration award will "turn[] to the courts."  *Sanderson*, 909 F.2d at 215.

## STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT

At issue on this Motion is whether Plaintiffs may even maintain this action in this Court when:

- Plaintiffs are bound by the outcome of the arbitration conducted by their own representatives, as the documents cited and relied on in the Complaint[7] plainly show that:

  - o The ISL resulted from a fully litigated arbitration between the representatives of the two groups, all of whom had full authority under federal law to act on behalf of the members of their respective groups; and that

  - o Plaintiffs' representatives agreed to the arbitration process and the arbitrators, made no objection to the arbitration or decision, and never invoked the dispute resolution process (they had agreed to) to stop or revise the arbitration process; and

- Even if Plaintiffs are not bound by the Award:

  - o Plaintiffs have set forth no plausible claim that the three prominent labor arbitrators who issued the Award were in any way biased or improperly influenced against them or the several thousand other pre-merger Continental pilots; but to the contrary:

    - ▪ Plaintiffs have merely set forth a *theory* as to why some ALPA officials *might* have wanted a result that dissatisfied the pre-merger United pilots less than the pre-merger Continental pilots,

---

[7] These documents may be considered by this Court in reviewing ALPA's Rule 12(b)(6) motion, *see infra* at 8 n.8. If the Court determines, however, that ALPA's Motion should be reviewed under Rule 56 — because one or more of these documents cannot be considered under Rule 12(b)(6) — then ALPA requests summary judgment in its favor.

but they have fallen woefully short of making *factual* allegations that "raise a right to relief above the speculative level," or that are more than "naked assertion[s]" or "merely consistent with" ALPA liability. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555**,** 577 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (noting that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); and

o In the absence of any colorable claim of ALPA wrongdoing, ALPA satisfied its duty here by establishing a "fair *process* for determining [the United and Continental pilots] seniority . . . resulting from [the carriers'] merger." *Air Wisc. Pilots Prot. Comm. v. Sanderson*, 909 F.2d 213, 216 (7th Cir. 1990) (emphasis in original).

Finally, the Complaint should be dismissed under Rule 12(b)(7) because Plaintiffs failed to join United, a Rule 19(a)(1)(A) "Required Party."

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS AND STANDARD OF REVIEW

#### A. Motion to Dismiss

In considering a motion to dismiss for failure to state a claim made under Rule 12(b)(6), the Court must view the Complaint in the light most favorable to the plaintiffs and take its specific factual allegations as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). However, allegations that are "no more than conclusions [] are not entitled to an assumption of truth," and even those allegations pleaded with factual support must be scrutinized to determine whether "they plausibly give rise to an entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009); *accord Moore v. Potter*, 275 F. App'x 405, 409 (5th Cir. 2008); *see also Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000); *Kane Ent. v. MacGregor (USA) Inc.,* 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim."). It is not

enough for allegations to set forth a "conceivable" claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 , 570 (2007)  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but has not 'show[n]' — 'that the pleader is entitled to relief[,]'" and the complaint must be dismissed. *Iqbal*, 556 U.S. at 679.  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must assert more than acts that are "merely consistent with" a defendant's liability." *Twombly*, 550 U.S. at 555, 557.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court may also consider documents referred to in and central to the Complaint. *Collins*, 224 F.3d at 498-99; *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 518 (S.D. Tex. 2011).  The Court may also consider documents which help explain documents referred to in the Complaint. *Downs v. Liberty Life Assurance Co.*, No. 3:05-CV-0791R, 2005 WL 2455193, at *2 (N.D. Tex. Oct. 5, 2005) (considering terms and conditions of disability plan under which plaintiff brought suit); *see also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (considering benefit plan documents when plaintiff's rights under the plans were "controlled by the plans' provisions as described in the plan documents").  Further, "[w]here one of these documents contradicts an allegation in the complaint, the document and not the allegation controls." *In re BP p.l.c. Sec. Litig.*, 922 F. Supp. 2d 600, 622 (S.D. Tex. 2013) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).[8]

B.    Motion for Summary Judgment

If the Court declines to dismiss the Complaint under Rule 12(b)(6), ALPA requests that the Court grant its alternative motion for summary judgment because "there is no genuine

---

[8] Here, the documents attached to the Orfield Declaration should be considered because they are referenced in the Complaint and are at the core of plaintiffs' claims, *see supra* at 4 n.3.

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Alleged material factual disputes may not be based on conclusory allegations, conjecture, or speculation. *Gerhardt v. Air Transp. Local 557,* No. H-09-3314, 2011 WL 666500 at *1 (S.D. Tex. Feb. 14, 2011);[9] *VRV Dev. L.P. v. Mid-Continent Cas. Co*., 630 F.3d 451, 455 (5th Cir. 2011); *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002).  The indisputable material facts here show that the Continental pilots' Merger Committee, not ALPA officials, represented plaintiffs in the seniority integration and that the Award did not violate the standards of the DFR.

C.   The DFR Standard

A union requires "wide latitude" to carry out its difficult responsibilities, *ALPA v. O'Neill*, 499 U.S. 65, 78 (1991), making judicial review of its decisions "highly deferential."  *Id. Accord United Steelworkers v. Rawson*, 495 U.S. 362, 374 (1990); *Spellacy v. ALPA*, 156 F.3d 120, 127 (2d Cir. 1998); *Butschek v. S.W. Bell Tel. Co.,* 952 F. Supp. 470, 478 (S.D.Tex. 1996) (applying "highly deferential" review of union's decisions).

Accordingly, a court may determine that a union has violated its duty of fair representation only if its conduct was discriminatory, in bad faith or "so far outside a 'wide range of reasonableness'" as to be "wholly 'irrational' or 'arbitrary.'"  *O'Neill*, 499 U.S. at 67; *Vaca v. Sipes,* 386 U.S. 171, 177 (1967); *Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*, 966 F. Supp. 4, 7 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998).  This means that, to survive a motion to dismiss, the Complaint must set forth a plausible claim that ALPA acted:

---

[9] Copies of all unreported cases are provided in the appendix to this motion.

(1) "arbitrarily" – that is, without any "rational basis or explanation," *Marquez v. Screen Actors Guild*, 525 U.S. 33, 45-46 (1998); *accord Jeffreys v. Communications Workers,* 354 F.3d 270, 274 (4th Cir. 2003), or

(2) in "bad faith" – meaning fraudulently, dishonestly or so as to intentionally mislead the plaintiffs, as demonstrated by "'substantial evidence of fraud, deceitful action or dishonest conduct[,]'" *Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971) (citation omitted); *O'Neill v. ALPA*, 939 F.2d 1199, 1203 (5th Cir. 1991) (bad faith is "invoked only to remedy the most egregious union conduct."); *Spellacy*, 156 F.2d at 126, or

(3) in a "discriminatory" manner, that is, "invidious[ly]," *O'Neill*, 499 U.S. at 81, in that the discrimination was based on "impermissible or immutable classifications such as race or other constitutionally protected categories, or [arose] from prejudice or animus," *Cooper v. TWA Airlines, LLC*, 274 F. Supp. 2d 231, 243 (E.D.N.Y. 2003); *accord Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1360-61 (10th Cir.1994); *Jeffreys*, 354 F.3d at 276-77, and was "intentional, severe, and unrelated to legitimate union objectives," *Lockridge*, 403 U.S. at 301.

In a case, such as the present, challenging the outcome of an arbitration, the complaint must also set forth a plausible claim that the union's alleged wrongful conduct caused an injury to plaintiffs by "seriously undermin[ing] the integrity of the arbitral process," *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567-68 (1976); *see Williams v. AT & T, Inc*., CIV A H-07-0559, 2009 WL 938495 (S.D. Tex. Apr. 6, 2009), *aff'd,* 356 F. Appx 761 (5th Cir. 2009) (same); *Landry v. The Cooper/T. Smith Stevedoring Co., Inc.,* 880 F.2d 846, 851 (5th Cir. 1989) (same); *see also Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989) (same); *Rakestraw*, 981 F.2d 1524, 1534 (7th Cir. 1992) ("A wrong is actionable only when it causes injury.").

Under these standards of review — under Rule 12(b)(6), under Rule 56 and for reviewing a DFR claim — DFR suits have repeatedly been dismissed for failure to state a claim or by granting summary judgment to unions.[10]

## II.   PLAINTIFFS' FAIL TO STATE A CLAIM AND DISMISSAL OF THE CASE IS APPROPRIATE.

### A.   The Plaintiffs are Bound by the Award.

The McCaskill-Bond Amendment, 49 U.S.C. § 42112(a)(1), required United to integrate the pilot seniority lists in accordance with Merger Policy, under which the Continental pilots' own Merger Representatives (all Continental pilots selected by the plaintiffs' own MEC) had "complete and full authority to act for and on behalf" of the Plaintiffs and the proposed Class in the matter of the seniority integration.  *Supra* at 2-3.

Plaintiffs' Merger Representatives agreed to select the arbitrators from a list provided by ALPA, participated with their United counterparts in selecting the arbitrators, hired their own counsel, fully participated in the arbitration, made arguments, examined and cross-examined witnesses, submitted other evidence, responded to the other side's arguments, made their own integration proposal, and, in short, did everything that a litigant does to achieve a favorable outcome for themselves and those they represented.  What Plaintiffs' representatives did *not* do, but *could* have done during this process if they thought there was any ground for doing so, was

---

[10] For example:  (a) Granting Rule 12(b)(6) dismissal:  *Moore v. Potter*, 275 F. App'x 405, 409 (5th Cir. 2008); *Sawyer v. APWU*, 2011 WL 6029925 at *5 (N.D. Tex. Nov. 30, 2011) (dismissing DFR complaint because plaintiff failed to set forth allegations "from which it can be reasonably inferred that the Union was [improperly] motivated" in handling "Plaintiff's grievances in the arbitration process"); *Blanks v. UAW Local 848*, 837 F. Supp. 2d 609, 615 (N.D. Tex. 2011) (dismissing DFR claim where plaintiff "simply ha[d] presented no competent evidence tending to suggest that the decision not to pursue his grievance to arbitration was arbitrary or made in bad faith."), *aff'd*, 464 F. App'x 284 (5th Cir. 2012); *accord Yeftich v. Navistar, Inc.*, No. 12-2964, 2013 WL 2992163, at *3 (7th Cir. June 18, 2013); *e.g., Semper v. New York Methodist Hosp.*, 786 F. Supp.2d 566, 585 (E.D.N.Y. 2011); and (b) Granting summary judgment for union:  *Gerhardt*, 2011 WL 666500 at *11; *Butschek*, 952 F.Supp. at 478; *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 292 (5th Cir. 1988); *Grovner v. Georgia-Pac. Corp.*, 625 F.2d 1289, 1291 (5th Cir. 1980); *see also Sim*, 166 F.3d 465; *Barr*, 868 F.2d 36; *Considine*, 43 F.3d 1349; *Jeffreys*, 354 F.3d 270; *Schmidt v. IBEW*, 980 F.2d 1167, 1170 (8th Cir. 1992); *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 618 (9th Cir.2003); *Rakestraw*, 981 F.2d 1524, 1536 (7th Cir. 1992).

to assert that ALPA exerted improper influence and attempted to manipulate the outcome, that the arbitration process was contrary to Merger Policy, that the United Merger Representatives made arguments reflecting an effort by ALPA (as opposed to the United pilots themselves) to sway the arbitrators or influence the outcome, that the arbitrators whom they helped to select were in fact biased against the Continental pilots, or that the Award was the product of fraud or corruption so as to be subject to relitigation.

Plaintiffs — not their Merger Representatives — seek a second bite at the apple — a chance to arbitrate again the same issue that their representatives already arbitrated.  Even before McCaskill-Bond required the parties to follow ALPA Merger Policy in this case, the courts recognized that represented employees are bound by a seniority arbitration award achieved by their own representatives without the representatives' timely objection.  Thus, in *Gvozdenovic v. United Air Lines*, 933 F.2d 1100 (2d Cir. 1991), over 1,200 former Pan American flight attendants sought to set aside an arbitration award governing their integration into the United flight attendant seniority list.  The Court of Appeals affirmed judgment for United and the flight attendants union, holding that the plaintiffs were "bound by the arbitration outcome" where a committee formed by the plaintiffs' union represented them and agreed to arbitration, the committee "chose counsel . . . and argued vigorously" on behalf of the plaintiffs' position, and that the plaintiffs' representatives at no point "before or during the arbitration, [] objected to the process, refused to arbitrate or made any attempt to seek judicial relief[.]"  *Id.* at 1105.

Courts have also held generally that employees whose interests are represented by their union in a prior proceeding are bound by the outcome where, as here, their representative participated in the proceeding without challenging the process.  Thus, in *Acree v. ALPA*, 390 F.2d 199, 202 (5th Cir. 1968), the Fifth Circuit held that the plaintiffs — a group of union-

12

represented employees — were bound by the outcome of a prior proceeding brought by their union as "their interests were there represented" by their union. *Accord Figueroa v. D.C. Metro. Police Dep't*, 2009 WL 3113241, at n.6 (D. D.C. 2009) (employee bound by outcome of arbitration handled by employee's union), *rev'd in part on other grounds*, 633 F.3d 1129 (D.C. Cir. 2011); *Monahan v. NYC Dep't of Corrections*, 214 F.3d 275, 284-87 (2d Cir. 2000) (union's prior action bars members' subsequent lawsuit involving same claims); *DaCosta v. Union Local 306*, 2009 WL 2986388 at *9 (S.D.N.Y. Aug. 12, 2009) (plaintiff bound by result of arbitration in which union acted on his behalf), *report and recommendation*, 2009 WL 3076077 (S.D.N.Y. Sept. 25, 2009); *see also Herring v. Delta Airlines, Inc.*, 894 F.2d 1020,1022 (9th Cir. 1990) (plaintiffs  bound by decision of their merger committee not to seek arbitration of integrated list).[11]

Nor can Plaintiffs claim that they are not bound by outcome because of allegations that their representatives participated in an ALPA "orientation" session, or because their counsel also represented ALPA in other matters.  None of these allegations presents a colorable claim of wrongdoing by the Merger Committee.  *See infra* at 17, 21-22.  And, of course, the Complaint contains *no* allegations directed against the Continental MEC, which selected the Continental Merger Committee Representatives.

In short, Plaintiffs are bound by the "final and binding" Award of the arbitrators, and they cannot obtain an order to void the Award and require a repeat of the arbitration over the same "precise question" resolved by the Award:  how the two seniority lists should be combined.

---

[11] *See also Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local 1*, 611 F.2d 580, 584-85 (5th Cir. 1980) (party who presented issue to arbitrator for resolution and participates in arbitration "without reservation" is bound by outcome and cannot thereafter obtain order to vacate award).

B.      Plaintiffs' Representatives Failed to Exhaust Internal Union Remedies.

Plaintiffs also cannot proceed with this case because their representatives, with whom they are in privity, took no steps to seek remedies available to them within ALPA or within the process made available by ALPA.  "[B]efore a [member may bring a] suit against a union for breach of its duty of fair representation . . . in the courts, the member must first exhaust" available remedies, or "show an adequate reason for not doing so."  *Hayes v. Bhd. of Ry. Clerks/Allied Servs. Div.*, 727 F.2d 1383 (5th Cir. 1984); *accord Sandoval v. Bhd. of Ry. Clerks*, 1986 WL 8893, at *2 (S.D. Tex. July 18, 1986).

The Protocol applies Merger Policy, except as modified by the Protocol.  Orfield Decl. Ex. C, Protocol ¶2.A.  It provides that the arbitration panel is empowered to resolve any disputes concerning the "interpretation or application" of the Protocol.  *Id.* ¶2.M.  Under Merger Policy, the arbitration panel is to reach a "fair and equitable integrated seniority list."  Orfield Decl., Ex. D, Merger Policy part 3.C.5.a.1.  Thus, the Continental Merger Committee could have raised issues with arbitration panel as to whether the arbitration process or award conformed to the requirements of Merger Policy as adopted in the Protocol.[12]  But neither the Committee nor the Continental MEC sought to invoke either of these procedures (and there is no Complaint allegation that they did).

Had the Continental Merger Representatives sued to challenge the Award based on the contentions contained in the Complaint, they would have been met with a showing that their Complaint was subject to dismissal because of a failure to exhaust.  Plaintiffs are in privity with those representatives, *see Acree*, 390 F.2d at 202, and are bound by the failure of their

---

[12] The Continental Merger Committee also did not invoke the TPA procedures for resolving disputes concerning the interpretation or application of the TPA, which also covered the seniority list integration process.  *See* TPA ¶12.

14

representatives to exhaust the available internal remedies — and as a result their Complaint should be dismissed.[13]

      C.    <u>Plaintiffs' Allegations Fail to State A DFR Claim</u>.

Plaintiffs launch multiple charges against ALPA Merger Policy, ALPA conduct related to the seniority list merger process, the Continental Merger Representatives and the arbitrators, all of it intended to support a claim that ALPA unfairly influenced the outcome.  These contentions, singly or as a group, fail to "plausibly give rise to an entitlement to relief" and must be dismissed.  *Iqbal*, 556 U.S. at 679.

      1.    <u>ALPA Merger Policy</u>

**Neutrality of Merger Policy.**  According to Plaintiffs, ALPA's Merger Policy "formalizes ALPA's ability to assure a final seniority list that favors larger pilot groups." Compl. ¶37.  It does nothing of the sort.  It authorizes the Merger Representatives to negotiate and arbitrate on behalf of their respective groups, giving ALPA no authority in the process; it entitles the Merger Representatives to establish a different set of procedures; and it merely requires the Merger Representatives and the arbitrators, in attempting to achieve a fair and equitable result, to consider three factors *among others*, with no particular weight and in no particular order.  In different cases, these factors will work in different directions, regardless of the size of the pilot groups.

Given that different groups will likely perceive fairness differently, what matters is that ALPA requires the pilots themselves to handle their own seniority integration and to attempt to shape the outcome as they see fit.  On this basis, courts have held that by complying with Merger

---

[13] The Complaint lacks any allegation that would excuse a failure to exhaust internal union remedies because (1) the Committee "could not hope to obtain a fair hearing" on any claim; (2) that "internal union appeals procedures would be inadequate … to award" the full relief sought; or (3) that "exhaustion of internal procedures would unreasonably delay" judicial review of the claim.  *Clayton v. UAW*, 451 U.S. 679, 689 (1981); *Eash v. Bhd. of Ry. Clerks*, No. SA-84-CA-0049, 1985 WL 9669, at *3 (W.D. Tex. 1985).

Policy ALPA discharges its fair representation duty because the process, which culminates in arbitration, is fair.  *See Sanderson*, 909 F.2d at 216; *Rakestraw v. United Air Lines*, 981 F.2d 1524, 1533 (7th Cir.  1992) ("Adhering to this [ALPA Merger Policy] insulates the union against a charge that advocating the arbitrators' award in negotiations with the employer violates the duty of fair representation."); *see also Gvozdenovic*, 933 F.2d at 1107 (union does not breach its DFR by providing arbitration for merging seniority lists).

**Selection of Arbitrators.**  Plaintiffs wrongly assert that Merger Policy "bars" the Merger Committees from selecting arbitrators who are not on an "approved list of ALPA-blessed arbitrators."  Compl. ¶¶37(a), 46.  The United and Continental Representatives *themselves agreed* to select the arbitrators from an ALPA-supplied list of labor arbitrators, Orfield Decl. Ex. C, Protocol ¶2.F, but they were free to do otherwise, Orfield Decl. Ex. D, Merger Policy part 3.C.5.c.2.a.  Even if ALPA had required the parties to select from an approved list, however, that fact, as determined long ago by the Fifth Circuit, would hardly give rise to a charge of "bias" on the part of the arbitrators or undue influence by ALPA.  *See Del Casal v Eastern Airlines, Inc.*, 634 F.2d 295, 299 (5th Cir. 1981) (board members appointed by allegedly hostile union "were obligated to determine disputes . . . in an independent, impartial manner"; plaintiff challenging the award would be required to allege facts demonstrating bias); *see also Cunningham v. United Airlines, Inc.*, 2014 WL 441610, at *6 (N.D. Ill. Feb. 4, 2014), *appeal docketed*, No. 14-1453 (7th Cir March 3, 2014) ("This court will not assume that panel members 'obligated to determine disputes ... in an independent, impartial manner,' are partial or biased simply because a certain party selected them." ) (*quoting Del Casal*)).

**Selection of Mediator and Submission to Arbitration.**  Plaintiffs also claim that Merger Policy "[a]llows ALPA's president to unilaterally appoint a 'neutral' mediator and to

send the negotiations to arbitration," Compl. ¶37(c).   But Merger Policy permits pilot group representatives to agree that *they* will select the mediator, and that is what paragraph 2.F of Protocol provided; further, the Protocol — not ALPA's President — set the timetable for submitting the case to arbitration, if negotiations did not produce a resolution.   Orfield Decl. Ex. C, Protocol ¶2.H.

**ALPA "Orientation" and Communication.**   It is equally difficult to take seriously Plaintiffs' claims concerning ALPA's orientation programs and initial communications to the pilots about the seniority list integration, Compl. ¶¶37(b), (d), 62.   ALPA has an obvious interest in educating members of Merger Committees entering into a seniority integration process on how the Policy works and in educating the pilots it represents about the process.   *See Sanderson*, 909 F.2d at 216 (it is "not in the interest of organized labor to incite workers to fight among themselves over job rights").   And this is all Merger Policy provides, setting forth that orientation meetings are to be attended by the MEC Chairmen and the Merger Representatives of the two airlines to "orient the participants on the provisions of this policy," Orfield Decl. Ex. D, Merger Policy part 3.A.1.a, and requiring ALPA to inform the membership "what ALPA Merger Policy is intended to accomplish."   *Id.* part 3.A.1.b.   The idea that informing Merger Representatives, MEC Chairmen, and the affected membership about the provisions of Merger Policy would be a means of distorting the outcome to favor one group or the other lacks *any* plausibility, especially where, as here, there is no evidence that the Representatives and the MEC Chairmen ever complained that the communications (which Plaintiffs would have received) were biased, or that any of this made the slightest difference to the arbitrators who decided this case.[14]

---

[14] Plaintiffs' contention that "the only pilots with a voice in the seniority-list combination are well-connected insiders who have advanced through the political ranks of ALPA," Compl. ¶ 36, also earns a "so-what?"; the Continental representatives' political experience would come from being elected by their fellow Continental pilots

**Policy Factors.**  So, too, Plaintiffs wrongly criticize the requirement of Merger Policy that Merger Representatives consider certain factors, Compl. ¶37(e); Merger Policy does not limit the Representatives or arbitrators to those factors and does not assign to them a weight or order.  Orfield Decl. Ex. D, Merger Policy part 3.C.4.e.  Plaintiffs, moreover, do not (and cannot) allege that these factors are irrational or unrelated to legitimate considerations.  To the contrary, they are all employment-related concerns relevant to integrating seniority lists.  *See supra* at 5 (Continental Merger Committee's proposal relied on employment status and category to fashion its proposal favorable to Continental pilots); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338-39, 342 (1953); *Rakestraw*, 981 F.2d at 1533 (longevity is rational basis for seniority integration); *Sanderson*, 909 F.2d at 215.

## 2.   Plaintiffs' Contentions That ALPA "Meddle[d]" in the Arbitration

Plaintiffs have made only conclusory allegations that ALPA "meddle[d]" in the arbitration and breached its Merger Policy to favor the pre-merger United pilots, Compl. ¶45. Because Plaintiffs are dissatisfied with the outcome, they in effect believe that someone other than their own Representatives must have been responsible, and they have created an unsupported *theory* as to why that might be so and even less supported *theory* as to how it happened.

**Records Issues.**  Plaintiffs complain about the presence of an ALPA attorney at one hearing and absence at another concerning "records" issues, Compl. ¶¶48, 49, but they make no claim that the discovery issues in those hearings affected the outcome of the case, that ALPA had any influence on the results of the hearings, or that, indeed, there was anything but a proper reason for an ALPA attorney to be present on one occasion and not on another.

---

and, in any case, experienced representatives would certainly be what a Continental pilot would want in someone dealing with other pilot group representatives.

**Decision Maker for Meaning of "Date of Hire" and "Longevity."**   Plaintiffs allege that ALPA "disregarded its own Merger Policy" to "favor[] the United pilots" by leaving it to the arbitrators to determine the meaning of "date of hire" and "longevity" as used in Merger Policy, Compl. ¶¶49, 50.  Plaintiffs have the facts exactly backwards.  The letters Plaintiffs cite as their source, *see* Compl. ¶49 (letters for Merger Committees to ALPA President), demonstrate that *their* Representatives requested that these disputes be resolved by the arbitrators and not by ALPA, and that the United pilots argued the opposite, Orfield Decl. Ex. G at 1-2 & Ex. H at 5, and that ALPA's president agreed with Plaintiffs' representatives that this dispute should be resolved by "utilizing the mediation and arbitration procedures set forth in ALPA's Policy," Award at 24-25.  Those procedures specified that disputes concerning employment data would be resolved, if necessary, by the "mediation and arbitration procedures" of the Policy.  Orfield Decl. Ex. D, Merger Policy part 3.C.4.b.  ALPA's construction of its Merger Policy was, of course, entirely reasonable and is thus entitled to considerable deference.  *O'Neill*, 939 F.2d at 1206 (union's interpretation of its "own governing documents should be accorded deference 'unless it is patently unreasonable.'" (citation omitted)).

**United Merger Committee Statements.**   Plaintiffs also allege that ALPA wrongly "remained silent" when the United Merger Representatives allegedly "invit[ed] . . . the arbitrators to consider the political repercussions to ALPA of a seniority list that did not satisfy the United pilots," Compl. ¶¶51-55.  Thus, in this instance, ALPA allegedly interfered by saying nothing.

First, however, the United pilots did not make the argument that Plaintiffs claim, but, rather, as plainly demonstrated in the documents upon which Plaintiffs rely, the United Merger Representatives referred to the US Airways/America West experience to bolster their emphasis

on the importance of longevity as a factor in the Merger Policy as revised after that integration, Orfield Decl. Exs. E, I, just as the Continental pilots argued (in their own self-interest) that the purpose of the revision to Merger Policy was mainly procedural and that the factors in merger policy were "neutralized" and not "prioritized" or "emphasized."  Orfield Decl. Ex. F.

Further, given ALPA's obligation to remain "neutral[]" during the integration process, Compl. ¶47; *see also supra* at 2-3, if the Continental pilots believed that the United pilots made an improper argument, it was up to them, and not ALPA, to attempt to persuade the arbitrators. Plaintiffs, however, make *no* allegation that their Representatives objected to the United pilots' arguments, nor do they even claim that ALPA ever communicated to the arbitrators its alleged "desire" for "the arbitrators to remember that displeasing the majority faction of United pilots could deal a massive financial and political loss to ALPA,"  Compl. ¶55.  Briefly put, the Complaint is devoid of any allegation that ALPA took *any* position on the merits, much less that it communicated *any* alleged position (including through the United Merger Committee (*contra* Compl. ¶61) to the Arbitration Board.[15]

**Consultant/Witness for United Merger Committee.**  Plaintiffs also allege that ALPA breached Merger Policy by paying the expenses of a consultant/witness for the United Merger Committee, pointing to a union "annual" filing that show a $19,000 payment to the consultant/witness (Richard Harwood).  Compl. ¶¶56-57.  But the facts are otherwise.  This expense was reported on the *United MEC's* LM-2 filing with the U.S. Department of Labor ("DOL"), Declaration of Michael Hamilton ("Hamilton Decl.") Ex. A, and, consistent with

---

[15] The Board's Award reveals no evidence that the Arbitrators were moved by a desire to avoid a United departure from ALPA.  In its decision, the Board noted the "detrimental" effects of the America West-US Airways seniority integration dispute on both ALPA and the pilots of these carriers, *contra* Compl. ¶63, but reviewed this issue solely in describing the revisions to Merger Policy which "restor[ed]" longevity as a factor – with status and category, and career expectations – to be considered in merging lists.  Award at 18, 19.  The Board concluded that "all three listed factors are relevant, important and necessary to produce a fair and equitable" list, and nothing more.  *Id.* at 20.

Merger Policy, Orfield Decl. Ex. D, Merger Policy part 3.F.4., the money for this consulting/witness payment came from the separate fund wholly paid for by pre-merger United pilots through a United MEC assessment on United pilots to support the United pilot side merger activities, *see* Hamilton Decl. ¶¶4-5, 8 and Ex. B. Only these specially-assessed United merger funds and no ALPA treasury funds were used to make these United-side merger-related payments. *See id.* at ¶¶5, 8-9. Hence, the payment to Harwood did not breach Merger Policy.

**Alleged Behind-the-Scenes Influence.** Plaintiffs also claim to "believe[] that ALPA used its influence behind the scenes" to favor the pre-merger United pilots in ways "known only to ALPA" and "beyond the . . . instances" of purported wrongdoing "known" to plaintiffs, Compl. ¶¶62, 79. These types of statements obviously fall far short of the *Twombly/Iqbal* pleading requirements.

3.   Plaintiffs' Allegations Concerning Their Merger Committee and Its Counsel

**Merger Committee Allegations.** Plaintiffs allege that "[a]t least one Continental pilot objected to ALPA about possible conflicts of interest involving the Continental pilots' Merger Committee," Compl. ¶60, but they do not identify the pilot nor, even more important, the purported "conflict of interest," leaving as a mystery why ALPA "did nothing in response," *id.*, or should have done anything. Moreover, even while plaintiffs (unsuccessfully) try to impugn the integrity of their own Representatives, they rely on those Representatives' proposal in the arbitration as the benchmark to support their allegation that the Award was unfair to the Continental pilots. *See* Compl. ¶71 & n. 1.

**Allegations Regarding Merger Committee Counsel.** Plaintiffs allege that counsel to the Continental Merger Committee also represented ALPA in another litigation — thus permitting ALPA to "influence" the arbitration, Compl. ¶59. The suggestion — devoid of any

specifics — that Committee counsel, who was selected by the Continental Merger Representatives and not ALPA, *supra* at 4, did not carry out his ethical obligations to his client, the Continental Merger Committee, is worse than baseless.  *See Hammond v. ALPA,* 1991 WL 202638 at *3 (N.D. Ill Sept. 30, 1991) (plaintiffs' allegation of wrongdoing by union's lawyer "is nothing short of scurrilous.").

### 4.   The Claim of ALPA's Intent to Interfere Is Not Even Plausible

At base, all of Plaintiffs' allegations center on the notion that ALPA skewed Merger Policy to favor the larger pilot groups to further its goal of becoming the sole bargaining representative of commercial pilots.  Compl. ¶¶33, 37.  This allegation is implausible on its face.

Seniority integration is always a "zero sum game," because higher relative seniority for one pilot means lower relative seniority for others, *Rakestraw*, 981 F.2d at 1533, always leaving some pilots dissatisfied with the end result.  As a result, if ALPA purposefully adopted or implemented anything but a neutral policy, it would run the risk of *losing* pilot groups.  There is an "'obvious alternative explanation,'" *Iqbal*, 556 U.S. at 682, for the terms of Merger Policy and ALPA's lack of involvement in the proceedings, namely, creating a fair process to minimize having pilots fighting over job opportunities.  *See Sanderson*, 909 F.2d at 216.  A court need not "accept as truth" pleadings that "make no sense . . . ."  *In re Livent, Inc. Noteholders Sec. Litig*., 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).  Plaintiff's overall DFR claim — that the United-Continental integration was skewed to favor the United pilots — is predicated on this implausible theory and for this reason alone should be dismissed.[16]

---

[16] Plaintiffs also contend the arbitrators employed "unorthodox methods" and "false data."  Compl. ¶68.  None of these allegations are directed against ALPA and therefore cannot support a DFR claim.  This conclusory assertion fails to identify any flaw in the Award and does not provide a basis for overturning the Award as it does not amount to a claim the arbitrators violated the RLA, engaged in fraud or corruption, or issued an award beyond their jurisdiction.  *See* Section 3 First (q), 45 U.S.C. § 153 First (q); *Del Casal*, 634 F.2d at 298-99 (this RLA Section 3 First (q) standard is "among the narrowest known to the law").  Further, Plaintiffs' allegation that ALPA paid the arbitrators twice their customary rates to "clear their schedules and rush the seniority-list combination," Compl.

D.    In the Event that Dismissal Is Not Appropriate Under Rules
12(b)(6) or 56, the Complaint Should be Dismissed Under Rule 12(b)(7).

While ALPA believes that dismissal is warranted under Rule 12(b)(6) or 56, the Complaint is also subject to dismissal under Rule 12(b)(7) because Plaintiffs failed to join United.  In their Prayer for Relief, Plaintiffs request that the United-ALPA UPA be amended to void the arbitrated seniority list.  Compl. ¶84(d).  This makes United an indispensable party because, if the requested relief were granted, it could "seriously affect" United (by altering its agreement with ALPA).[17]

United's presence in the lawsuit "is required for the fair and complete resolution of the dispute at issue."  *HS Res., Inc. v. Wingate,* 327 F.3d 432, 438-39 (5th Cir. 2003).  Because joinder of United is feasible,[18] the Complaint should be dismissed under Rule 12(b)(7), unless Plaintiffs file an Amended Complaint that joins United as a required party.  *Id.*; *Kellogg Brown & Root Servs., Inc. v. Altannia Comm'l Mktg. Co. W.L.L.*, 2007 WL 4190795 at *4 (S.D. Tex. Nov. 21, 2007).

## CONCLUSION

For the reasons set forth above, ALPA respectfully asks the Court to grant its Motion to Dismiss, or In the Alternative, for Summary Judgment and dismiss Plaintiffs' lawsuit entirely with prejudice.

---

¶58), even if true, does not allege fraud or corruption – which require a showing of misconduct by the arbitrators, *Farris v. Union Pac. R.R.*, 396 Fed. Appx. 125, 128 (5th Cir. 2010).

[17] *Case v. IBEW Local Union No. 1547,* 438 F. Supp. 856, 860 (D. Alaska 1977) (employee request to void collective bargaining agreement makes employer association [which is party to this agreement] indispensable party in lawsuit), *aff'd sub nom. Stelling v. IBEW Local Union No. 1547,* 587 F.2d 1379 (9th Cir. 1978).

[18] United conducts business in Houston, Compl. ¶7, and thus is subject to service of process in this case; in addition, joinder would not divest the Court of subject matter jurisdiction, which is based on federal question jurisdiction, *see* Compl. ¶6, or make venue improper, *see Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*, 884 F. Supp.2d 535, 538 (S.D. Tex. 2012).

**OF COUNSEL:**

Michael L. Winston
Thomas N. Ciantra
Joshua J. Ellison
Cohen, Weiss and Simon LLP
330 West 42nd Street, 25th Floor
New York, NY 10036-6979
Telephone: (212) 563-4100
Facsimile: (212) 695-5436

Shellist | Lazarz | Slobin LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

James K. Lobsenz
Johnathan A. Cohen
Air Line Pilots Association, International
1625 Massachusetts Avenue, NW, 8th Floor
Washington, D.C. 20036
Telephone: (202) 797-4054
Facsimile: (202) 797-4014

Respectfully submitted,

By:  _/s/ Michael E. Abram_
    Michael E. Abram
    New York Bar No. 1294941
    330 W. 42nd Street, 25th Floor
    New York, NY 10036-6979
    Telephone: (212) 356-0208
    Facsimile: (212) 695-5436
    mabram@cwsny.com

By:  _/s/ J. Alfred Southerland_
    J. Alfred Southerland
    State Bar No. 18860050
    Federal ID No. 07341
    11 Greenway Plaza, Suite 1515
    Houston, Texas 77046
    Telephone: (713) 621-2277
    Facsimile: (713) 621-0993
    alfsoutherland@sls-lawyers.com

By:  _/s/ Marcus C. Migliore_
    Marcus C. Migliore
    District of Columbia No. 411674
    1625 Massachusetts Avenue, NW,
    8th Floor
    Washington, D.C. 20036
    Telephone: (202) 797-4054
    Facsimile: (202) 797-4014
    Marcus.Migliore@alpa.org

**ATTORNEYS FOR DEFENDANT
AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL**

## <u>CERTIFICATE OF SERVICE</u>

      This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on April 25, 2014, to all parties of record via the Court's ECF system.

     _/s/ J. Alfred Southerland_
     J. Alfred Southerland